## WILSON & CO., Inc., v. BURKHOLDER.
### No. 4978.

Circuit Court of Appeals, Third Circuit.
March 4, 1933.

W. R. Brown, of Chicago, Ill., H. S. Ambler, Jr., of Philadelphia, Pa., and A. K. Gembick, of Chicago, Ill., for appellant.

Herbert Welty and Victor Frey, both of Philadelphia, Pa., for appellee.

White & Case, of New York City (Russell D. Morrill and A. C. Newlin, both of New York City, of counsel), amici curiæ.

Before BUFFINGTON and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In this case it appears that Paul C. Burkholder, hereafter called plaintiff, an inspector employed by the United States in the meat establishment of Wilson & Co., Incorporated, hereafter called defendant, was injured by a high-speeded ventilating fan alleged to have been so negligently used by defendant that he was injured while performing his duty as a meat inspector. He brought suit and recovered a verdict. Thereupon defendant appealed, and the question involved is whether there was evidence of defendant's negligence which warranted the trial judge in refusing defendant's request for binding instructions.

The proofs showed that the fan was located on the wall of a room used for cooking, boning, and cleaning of meats. It had a clearance of six feet and three inches from the floor, and the proof was unquestioned that under proper factory practice and the requirements of the state of Pennsylvania fans with such floor clearance required no guard. As an incident to the meat treatment carried on in the room, salt brine and particles of meat came from the meat, and plaintiff's duty, as described by himself, "was looking to see that the full containers were properly marked up with domestic meat labels * * * looking for clean floors, clean walls, clean clothing, miscellaneous."

On the day of the accident, a movable platform was placed against the wall and under the fan. Its top was about six or eight inches above the floor. It was six feet long and extended three feet from the wall; that is, the table took up three feet of floor space, leaving very considerable floor space between the table and the opposite wall. Its purpose, as described by plaintiff, was: "They used to keep containers on, * * * boxes for meat and empty barrels, and anything they used, so as to keep off the floor, to keep from contamination." There were no containers on the platform the day of the accident. The plaintiff stepped up on the platform, which he testified was in good condition, and said there was nothing on it that would cause him to slip "except it was wet—the dampness—my shoes were wet."

It will thus be seen that this low table or platform had been moved there and used to place containers on it to avoid contamination if placed on the floor. The nature of the structure and its elevation above the floor, the articles placed thereon, showed that its purpose and use were to avoid the use of it as a floor or passageway, and thereby avoid the contamination and fouling by shoes incident to the use of a floor. The proofs show the plaintiff stepped up on the platform, his foot slipped, he threw up his hands to save himself, and was caught by the revolving fan.

Now the use of this table as a footpath was a violation of the sanitary purposes for which it was meant, and which it was a sanitary inspector's duty to prevent by precept and example. The use of this table as a footpath did violence to its nature, purpose, and intent. To impose on this meat establishment, which was bound to avoid contamination, liability for a contaminating use which it neither intended nor had reason to foresee is manifestly unjust. The plaintiff contends he was forced to go on the platform to inspect barrels that stood on the floor in front of it, but this contention in words is not supported by facts. Asked the question, his testimony was:

"Q. You could have walked around to your left to the Government box where you were going, couldn't you? You could have walked down to your left and around that way, couldn't you? A. I wouldn't be doing my work.

"Q. I asked whether you could have done that. A. I could."

The proof was there were five workmen in the room. Not only could plaintiff, by his own statement, have walked around the barrels, but he, as inspector, was in control of the situation, and, if the barrels were not in a place on the floor where he could mark them without going on the table, he could have directed their removal to another place on the floor. Instead of following that course and using the adequate floor space and the aid of the workmen in making a path of safety, all of which the defendant had provided, the plaintiff chose to use as a pathway a table which was not meant for a contaminating foot passage. There was neither necessity, intimation, nor expectation that he would follow such a course. His own lack of due care, and not any failure on the part of the defendant meat company to furnish him safe inspection facilities, was the cause of the plaintiff's unfortunate injury. Such being the case, the judgment must be reversed.